IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
No. 2:25-CV-47-M-BM

| | | |
|---|---|---|
| CODY BRYANT GREGORY,<br><br>Plaintiff,<br><br>v.<br><br>FRANK BISIGNANO,<br>Commissioner of Social Security,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **MEMORANDUM AND RECOMMENDATION** |

Plaintiff Cody Bryant Gregory ("Plaintiff" or, in context, "Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of his application for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI"). This matter is before the court on Plaintiff's brief [DE-12] ("Pl.'s brief") seeking judgment in his favor, Defendant's responsive brief [DE-14] ("Def.'s Brief") in opposition, and Plaintiff's reply brief [DE-15] ("Pl.'s Reply"). The parties have fully briefed this matter pursuant to the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g), and this case is ripe for adjudication. The briefs were referred to the undersigned magistrate judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1). Having reviewed and considered the record, the administrative transcript, the briefs submitted by the parties, and the applicable law, it is recommended that Plaintiff's brief [DE-12] be allowed, Defendant's brief [DE-14] be denied, and the case be remanded to the Commissioner for further proceedings consistent with the Memorandum and Recommendation.

## I. STATEMENT OF THE CASE

Plaintiff protectively filed applications for a period of disability, DIB, and SSI on August

29, 2022, alleging disability beginning March 1, 2022. Transcript of Proceedings ("Tr.") 73, 241-42, 260-78. His claim was denied initially. Tr. 73-92, 135-46. Plaintiff filed a request for reconsideration (Tr. 147-48), and was denied upon reconsideration on January 25, 2024 (Tr. 93-112, 149-64). On February 16, 2024, Plaintiff requested a hearing before the Administrative Law Judge ("ALJ"). Tr. 165. A hearing before the ALJ was held on July 8, 2024, at which Plaintiff, represented by counsel; Plaintiff's mother, Tracy Gregory; and a vocational expert ("VE") appeared and testified. Tr. 30-72. On July 29, 2024, the ALJ issued a decision denying Plaintiff's request for benefits. Tr. 14-29.

On October 1, 2024, Plaintiff requested a review of the ALJ's decision by the Appeals Council. Tr. 235-36. On July 29, 2025, the Appeals Council denied Plaintiff's request for review. Tr. 1-5. Plaintiff then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In

reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520 and 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity ["SGA"]," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity ["RFC"] to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with

the "special technique" described in 20 C.F.R. §§ 404.1520a(b)-(c) and §§ 416.920a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* §§ 404.1520a(e)(4), 416.920a(e)(4).

## IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Plaintiff "not disabled" as defined in the Act. Tr. 25. At step one, the ALJ determined Plaintiff had not engaged in substantial gainful employment since March 1, 2022, the alleged onset date. Tr. 19.
Next, at step two, the ALJ determined Plaintiff had the following severe impairments: schizophrenia, depression, and anxiety. Tr. 20. At step three, however, the ALJ concluded these impairments both physical and mental, were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 20. Applying the technique prescribed by the regulations, the ALJ found that Plaintiff's mental impairments have resulted in moderate limitation in understanding, remembering, or applying information; marked limitation in interacting with others; moderate limitation in concentrating, persisting, or maintaining pace; and moderate limitation in adapting or managing oneself. Tr. 20.

Prior to proceeding to step four, the ALJ assessed Plaintiff's RFC, finding Plaintiff had the

ability to perform a full range of work[1] at all exertional levels but with the following limitations:

> the claimant is capable of performing short, simple, routine, repetitive tasks in two-hour intervals. Occasionally, he can have superficial interaction with the general public. Occasionally, he can have direct interaction with co-workers providing it does not require him to work in tandem or in teams. Occasionally, he can have direct interaction with supervisors. He is capable of performing occupations that are not production rate and/or fast paced assembly line focused.

Tr. 21.

In making this assessment, the ALJ found Plaintiff's statements about his limitations not entirely consistent with the medical evidence and other evidence in the record. Tr. 23.

At step four, the ALJ concluded Plaintiff did not have the RFC to perform the requirements of his past relevant work as a construction worker, as actually or generally performed. Tr. 24. Nonetheless, at step five, upon considering Plaintiff's age, education, work experience, and RFC, the ALJ determined Plaintiff is capable of making an adjustment to other work that exists in significant numbers in the national economy. Tr. 24-25.

---

[1] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. §§ 404.1567(c), 416.967(c).

"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b), 416.967(b).

"Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a), 416.967(a); S.S.R. 96-9p, 1996 WL 374185, at *3 (July 2, 1996). "Occasionally" generally totals no more than about 2 hours of an 8-hour workday. S.S.R. 96-9p, 1996 WL 374185, at *3. "Sitting" generally totals about 6 hours of an 8-hour workday. *Id.* A full range of sedentary work includes all or substantially all of the approximately 200 unskilled sedentary occupations administratively noticed in 20 C.F.R. Part 404, Subpart P, Appendix 2, Table 1. *Id.*

## V. OVERVIEW OF PLAINTIFF'S CONTENTIONS

In this case, Plaintiff alleges that the ALJ erred in that (1) the ALJ "failed to provide any explanation as to why Plaintiff's subjective complaints were deemed inconsistent with the evidence of record"; and (2) "[t]he ALJ's decision does not explain how the RFC was formulated." Pl.'s Brief [DE-12] at 1.[2] Each will be discussed below.

## VI. DISCUSSION

### A. Plaintiff's subjective complaints

Plaintiff alleges the ALJ "failed to provide any explanation as to why Plaintiff's subjective complaints were deemed inconsistent with the evidence of record." Pl.'s Brief [DE-12] at 1. Plaintiff also argues "the ALJ's summary of the medical evidence *supports* Plaintiff's subjective complaints." *Id.* at 10 (emphasis in original).

The Commissioner argues that the "ALJ properly considered relevant evidence and accounted for limitations that were supported by such evidence when considering the unique characteristics of schizophrenia." Def.'s Brief [DE-14] at 9. Further, the Commissioner argues the "ALJ correctly explained the two-step process when evaluating symptoms and found that while the record established severe impairments that could cause Plaintiff's alleged symptoms, his allegations concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with and supported by the evidentiary record." Def.'s Brief [DE-14] at 10.

In reply, Plaintiff argues "[t]he ALJ's summary of evidence, not linked to any of Plaintiff's subjective complaints, is no substitute for a subjective symptom analysis." [DE-15] at 1. Plaintiff reasons "[t]he lack of analysis is a violation of 20 C.F.R. §§ 404.1529, 416.929 and SSR 16-3p,

---

[2] Except for citations to the Transcript of Proceedings ("Tr."), all citations to documents using the docket entry number [DE-] provided in the court's docket will specify the page number automatically assigned by the CM/ECF system, rather than the page number, if any, specified in the original document.

and is a harmful legal error." *Id.* at 2.

In his written decision, the ALJ provides a summary of Plaintiff's testimony regarding his functional limitations. The ALJ noted that Plaintiff stated he stayed with his parents during the weekdays, but lived alone on the weekends. Tr. 22. The ALJ also considered Plaintiff's report that "he attended college for engineering and then agriculture"; "he had a driver's license"; "[h]e was 5'7" and weighed 175 pounds"; "he has been working with his father for 10 years [who] paid him $300 a week"; "his parents paid his bills"; "he was unable to do other jobs because he was unable to decipher reality and hallucinations"; and "he experienced auditory and visual hallucinations." *Id.* The ALJ also considered Plaintiff's reports that "he was held at gunpoint in a robbery and had PTSD"; "he experienced depression from bipolar disorder"; "he had issues with concentrating while working"; "he developed paranoia, and it never went away"; he was "in rehabilitation for two weeks due to his marijuana usage"; "he was voluntarily admitted to a mental hospital because he was hearing voices"; "he had episodes about five times a year"; "hallucinations caused him to breakdown, but he had only been committed once"; "he had a hard time focusing" and he "was able to cook for himself." *Id.* The ALJ emphasized that Plaintiff denied having "trouble with the law or having any difficulties with bosses, peers, or co-workers." *Id.*

The ALJ also summarized the testimony of Plaintiff's mother that Plaintiff "was able to pay his bills"[3] and "started having mental health issues in college"; that "[h]is boss tried to accommodate but he continued to have paranoid episodes"; his "father accommodated him during the week"; Plaintiff "was compliant with medications at her house because she would watch him take it with food"; and that at times Plaintiff was anxious "that he was being given the wrong

[3] It is unclear why the ALJ found Plaintiff's mother to have testified that he could pay his own bills. At the administrative hearing, Plaintiff's mother testified that "I pay all his bills online for him." Tr. 59.

medication but there have never been accidents." *Id.*

The ALJ considered and summarized various medical records including November 2022 records documenting that Plaintiff: established care for his history of schizophrenia and generalized anxiety disorder; "felt stable and just needed to continue his treatment"; "stated that most of his days were good"; and "denied depressive symptoms." Tr. 22. The records also document that Plaintiff was "taking psychotropic medications to assist with his symptom management" and that "[h]e denied any additional symptoms." *Id.* Plaintiff "presented with a varied affect," "was congruent with his verbal content," and "denied homicidal or suicidal ideations as well as auditory or visual hallucinations." *Id.* Plaintiff reportedly provided that "he heard voices at times, and it was noted that he struggled with some symptoms when not on medications" and "would benefit from continued treatment." *Id.* Records from January 2023, note that Plaintiff reported that "as long as he slept, he was okay" and "that his medications kept him balanced and that he would like to get them refilled." Tr. 23. The ALJ also considered records, which documented that in March 2023 Plaintiff "indicated that the combination of his medications was working for him"; that "[i]n June 2023, [Plaintiff] denied any side effects from his medications" and that in September 2023, [Plaintiff] indicated that he had only had one bad day since his last visit." Tr. 23.

The ALJ summarized medical records from April 2024 providing that Plaintiff "returned . . . with his mother"; " presented with a euthymic mood and congruent affect"; "expressed concern about running out of his medications"; and "acknowledged that his medications were effective and recognized the importance of being compliant." *Id.* The ALJ highlights that in a May 2024 medication management video meeting with Plaintiff and his mother, Plaintiff reported "that he usually did okay managing his schizophrenia, but he would sometimes skip doses of his

medications"; had "episodes about once every two or three months of paranoia, thinking people were yelling at him, coming to get him, and animals fighting with each other"; sometimes "skipp[ed] medication or [took] less because he feared gaining weight or wanting to stay up late to socialize with friends and the medication made him sleepy"; and "experienced paranoia and auditory and visual hallucinations" on days that he had more anxiety. *Id.* The provider observed that Plaitniff "had some insight into his illness but struggled to fully accept the gravity of it" and while Plaintiff "was future focused and had goals to make more money and work independently . . . , his symptoms made that a challenge." *Id.* The ALJ also emphasizes Plaintiff's denial of "depression, . . . suicidal or homicidal ideations[, or] medication side effects." *Id.*

Following the summaries of the testimony, medical records, and notes, the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." *Id.* The ALJ does not provide any explanation for the inconsistencies to which he is referring.

An ALJ errs where "the ALJ acknowledge[s] the record evidence supporting Plaintiff's subjective complaints, [yet] fail[s] to explain how he discredited Plaintiff's subjective allegations." *Shawntelle E. v. Kijakazi*, No. 3:22-cv-00365, 2023 U.S. Dist. LEXIS 86803, at *37 (E.D. Va. April 28, 2023), *report and recommendation adopted by* 2023 U.S. Dist. LEXIS 85927 (E.D. Va. May 16, 2023). There is no precise format an ALJ must use when discussing a Plaintiff's subjective limitations, as long as the ALJ's reasoning "may reasonably be discerned." *Hansen v. Kijakazi*, No. 5:20-cv-193-MOC, 2021 U.S. Dist. LEXIS 234049, at *11-12 (W.D.N.C. Dec. 7, 2021) (quoting *Alaska Dep't of Environmental Conservation v. E.P.A.*, 540 U.S. 461, 496-97, 124 S. Ct. 983, 157 L. Ed. 2d 967 (2004).

Yet here, the undersigned agrees with Plaintiff that the ALJ's lack of analysis frustrates the

court's ability to meaningfully review regarding why the ALJ apparently discounted or disregarded certain aspects of Plaintiff's subjective limitations. For example, Plaintiff and his mother reported extensive support that Plaintiff received from his family in completing his work and activities of daily living, including that he stayed with his parents during the week, his parents paid his bills, his father accommodated him during the week and would let him go sit in the truck when he had issues and that plaintiff's mother ensured he takes his medication during the week. Tr. 22, 60-61. The ALJ also noted that Plaintiff's mother accompanied him to various medical appointments. Tr. 23. The RFC does not appear to include any limitation that would accommodate Plaintiff's alleged reliance on this family support structure, nor does the ALJ explain why any such limitation is not necessary. Moreover, the undersigned does not find this omission harmless as the ALJ also noted medical records indicating that environments which increase Plaintiff's anxiety could exacerbate his paranoia and auditory and visual hallucinations. Tr. 23.

While there may indeed be details and explanation that can reconcile the inconsistencies described above upon review, the ALJ does not state any in the written decision. It is not the reviewing court's role to reconcile inconsistencies. Accordingly, the ALJ's lack of explanation and analysis frustrates meaningful review by the court, and the undersigned RECOMMENDS this case be remanded to the Commissioner for further proceedings. To be clear, the court expresses no opinion as to whether Plaintiff does or does not require additional or different limitations based upon his subjective limitations or other evidence. The court only seeks to ensure that the relevant evidence is considered and that the decision is fully explained, so as to permit meaningful review by the court if necessary. It is, of course, up to the Commissioner to determine what weight to give all evidence.

## B. Plaintiff's RFC

Plaintiff alleges that the "ALJ's decision does not explain how the RFC was formulated". Pl.'s Brief [DE-12] at 11. Specifically, Plaintiff argues "the ALJ did not explain how the Step-three finding that Plaintiff had marked restrictions in interacting with others translated into the RFC determination." *Id.* at 12. Plaintiff argues "[t]he ALJ provided no explanation as to why these restrictions [in the RFC] were deemed adequate, or how these restrictions accounted for Plaintiff's severe schizophrenia." *Id.*

The Commissioner maintains that the "ALJ carefully considered Plaintiff's severe impairments, both singly and in combination with other impairments, and provided sound[] reasons for his findings." Def.'s Brief [DE-14] at 5. The Commissioner argues "[t]he ALJ provided sufficient discussion of his functioning to enable meaningful review" and "the ALJ's decision reflects a holistic and balanced approach to evaluating Plaintiff's symptoms and other evidence in the record." *Id.* at 7-8.

"The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p, 1996 SSR LEXIS 5. A "proper RFC analysis has three components: (1) evidence, (2) logical explanation, and (3) conclusion." *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019). "To assess a claimant's RFC, the ALJ must consider *all* relevant evidence in the record, including medical history, medical signs, laboratory findings, lay evidence, and medical source statements." *Beard v. Berryhill*, No. 8:16-cv-3223, 2017 U.S. Dist. LEXIS 199415, at *22 (D.S.C. Nov. 29, 2017) (citing 61 Fed. Reg. 34,474-01, at 34,477) (July 2, 1996)), *report and recommendation adopted by* 2017 U.S. Dist. LEXIS 199409 (D.S.C. Dec. 5, 2017).

In light of the above recommendation that this case be remanded to the Commissioner, and as the findings on remand may be substantially different, the undersigned does not make a recommendation regarding Plaintiff's arguments on the ALJ's discussion of the RFC. On remand, however, the ALJ should consider Plaintiff's argument here. Pl.'s Brief [DE-12] at 11-14. The ALJ should also consider whether additional explanation is necessary regarding the formulation of the RFC. Without an adequate explanation of the ALJ's findings, the court is left to guess about how the ALJ arrived at his conclusions, and meaningful review is frustrated. *Mascio v. Colvin*, 780 F.3d 632, 637 (4th Cir. 2015).

## VII. CONCLUSION

For the reasons stated above, IT IS RECOMMENDED that Plaintiff's brief [DE-12] be ALLOWED, Defendant's brief [DE-14] be DENIED, and the case be REMANDED to the Commissioner for further proceedings consistent with the Memorandum and Recommendation.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until **September 17, 2026**, to file written objections to this Memorandum and Recommendation. The presiding district judge must conduct his own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C. Any response to objections shall be filed by the **earlier of 7 days from the filing of the objections or September 22, 2026**.

**If a party does not file written objections to the Memorandum and Recommendation**

**by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).**

Submitted, this 10th day of September, 2026.

Brian S. Meyers
United States Magistrate Judge